IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **TERRENCE GORE,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. **3:23-CV-683-L-BH** |
| § | |
| **LEXISNEXIS RISK SOLUTIONS, INC.,** § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

On September 15, 2023, the Findings, Conclusions and Recommendation of the United States Magistrate Judge ("Report") (Doc. 25) was entered, recommending that the court deny Plaintiff's Motion to Remand (Doc. 5), filed April 4, 2023. Plaintiff filed objections to the Report on September 28, 2023, to which Defendant responded on October 12, 2023. For the reasons herein explained, the court **rejects** the magistrate judge's findings and conclusions, as it determines that Plaintiff's Motion to Remand should be and is hereby **granted**.

### I.    Factual and Procedural Background

On March 6, 2023, Plaintiff Terrence Gore ("Plaintiff" or "Mr. Gore") originally sued LexisNexis Risk Solutions, Inc. ("Defendant" or "LexisNexis") in the 298th Judicial District Court, Dallas County, Texas. He alleges that he suffered damages because of the "adverse and defamatory false criminal conviction" that LexisNexis included in his credit report and failed to correct after he filed a complaint with the Consumer Financial Protection Board on February 13, 2023. The allegedly false information pertains to a May 6, 2016 traffic violation. In this regard, Mr. Gore alleges in his Petition that he was charged by the Arlington Police Department with a Class C misdemeanor for failing to yield the right of way on a green signal. He further alleges

that, although this charge was dismissed, LexisNexis "continued to report the false, derogatory, and adverse information to its subscribers," and the information was available to "businesses, employers, insurance companies, and credit bureaus." Pl.'s Pet. ¶¶ 13, 17.  Mr. Gore brings this action against LexisNexis pursuant to "state consumer protection statutes Texas Business & Commerce Code Chapter 20 [*et seq*.] *Regulation of Consumer Credit Reporting Agencies*, and Texas Business & Commerce Code Chapter 17 [*et seq*.] *Texas Deceptive Trade Practices Act*[.]" *Id.* ¶ 13.

Regarding damages, Plaintiff alleges, pursuant to Texas Rule of Civil Procedure 47, that he "seeks only monetary relief of $100,000 or less, including damages of any kind, penalties, costs, expenses, prejudgment interest and attorney's fees."  *Id.* ¶ 3. In addition, he alleges:

> As a result of the above Violations pursuant to Texas Business and Commerce Code Section 20 [*et seq*.], and Texas Business & Commerce Code Chapter 17 [*et seq*.] Plaintiff is entitled to recovery actual damages and greater of three times actual damage, together with reasonable attorneys' fees if any, and court costs.
>
> WHEREFORE, Plaintiff respectfully prays that judgment be entered against Defendant for damages of $70,000.00 and reasonable and customary attorney's fees if applicable, cost of court, and for such other and further relief as justice may require.

Pl.'s Pet. 6 (DAMAGES).

On March 31, 2023, Defendant removed the action to federal court based on diversity jurisdiction.  Defendant filed an Amended Notice of Removal in response to an order of deficiency entered by the magistrate judge regarding certain procedural requirements.  In its Amended Notice of Removal, Defendant alleges, as it did before, that there is complete diversity of citizenship between the parties, and the amount in controversy is satisfied given Plaintiff's allegation that he seeks $70,000, reasonable attorney's fees, and treble damages.

Plaintiff moved to remand the action on April 4, 2023, contending that the amount in controversy is not satisfied. Plaintiff asserts in his Motion to Remand that he intentionally limited the damages by alleging that he is seeking to recover "*$70,000 and reasonable and customary attorney's fees if applicable*" and "*actual damages and greater of three times actual damages.*" Pl.'s Mot. 2-3, 5. Although his pleadings include a request for attorney's fees, he notes that this request is qualified by his allegation "*if applicable.*" Plaintiff contends that it is "settled that pro se litigants [like him] are not entitled to attorney['s] fees." *Id.* at 5. He further contends that "court cost[s] are not factored into" the amount in controversy. *Id.* at 5. Plaintiff, therefore, argues that the court cannot reasonably infer from his pleadings that he is seeking more than $75,000 as required for subject matter jurisdiction based on diversity.

## II.     The Magistrate Judge's Findings and Conclusions

As noted, the magistrate judge issued a Report on September 15, 2023, recommending that Plaintiff's Motion to Remand be denied. The magistrate judge determined that the parties are diverse in citizenship because: (1) they "agree that Plaintiff is a citizen of Texas";[1] and (2) Defendant alleges that it is "incorporated in Georgia and has its principal place of business in Alpharetta, Georgia."[2] Additionally, the magistrate judge determined that the amount in controversy as required for diversity jurisdiction is satisfied because:

> The amount-in-controversy threshold is a necessary element that must be met before a federal court can properly exercise diversity jurisdiction. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). In a motion to remand, the amount in controversy is determined from the plaintiff's perspective. *Burr v. JP Morgan Chase Bank*, No. 4:11-CV-03519, 2012 WL 1016121, at *2 (S.D. Tex. Mar. 23, 2012). The defendant, as the removing party, bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. *De Aguilar v. Boeing Co. (De Aguilar I)*, 11 F.3d 55, 58 (5th Cir. 1993). The defendant may satisfy this burden by demonstrating that it is facially apparent from

---

[1] Report 3 (citing Doc. 10-4 at 24; Doc. 10 at 2).

[2] Report 3 (citing Doc. 10 at 2).

**Memorandum Opinion and Order – Page 3**

the plaintiff's petition that the claim likely exceeds $75,000.00, or by setting forth the facts in controversy that support a finding of the requisite amount. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). "Courts [] consider the nature of the claims and the types of damages sought to determine whether it is facially apparent that the amount in controversy meets [the] jurisdictional requirements." *Hannah v. Allstate Tex. Lloyd's*, No. EP-11-CV-269-KC, 2011 WL 5325257, at *2 (W.D. Tex. Nov. 2, 2011) (internal quotations omitted).

"[U]nless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Garcia [v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003)] (alteration in original) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). "The inquiry, however, does not end merely because the plaintiff alleges damages below the [amount-in-controversy] threshold." *De Aguilar v. Boeing Co. (De Aguilar II)*, 47 F.3d 1404, 1410 (5th Cir. 1995), *superseded by amendment on other grounds by* Tex. R. Civ. P. 47. "Instead, when a plaintiff specifically pleads [that] he seeks damages less than $75,000, the Fifth Circuit permits a removing defendant to demonstrate, by a preponderance of the evidence, that the amount in controversy actually exceeds the jurisdictional minimum." *Greco v. Jones*, 992 F. Supp. 2d 693, 699 (N.D. Tex. 2014) (citing *De Aguilar II*, 47 F.3d at 1411).

Plaintiff seeks actual and treble damages for Defendant's alleged violation of the DTPA, as well as attorney's fees. (doc. 10-4 at 27); *see* Tex. Bus. & Com. Code § 17.50(b)(1) & (d) (providing for treble damages and attorney's fees, respectively, under the DTPA). Although the amount in controversy is generally exclusive of interest and costs, *see, e.g., Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 881 (5th Cir. 2000), treble damages and attorney's fees typically are considered when calculating the amount in controversy, *Dow Agrosciences, L.L.C. v. Bates*, 332 F.3d 323, 326 & n.3 (5th Cir. 2003), *vacated on other grounds by Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431 (2005); *H & D Tire & Auto.-Hardware, Inc. v. Pitney Bowes, Inc.*, 227 F.3d 326, 330 (5th Cir. 2000).

Here, Plaintiff "prays that judgment be entered against Defendant for damages of $70,000.00 and reasonable and customary attorney's fees if applicable, cost of court, and for such other and further relief as justice may require." (doc. 10-4 at 27.) Plaintiff also alleges that he "is entitled to recovery [sic] actual damages and greater of three times actual damage, together with reasonable attorneys' fees if any, and court costs." (*Id.*) If treble damages are assessed on Plaintiff's requested award of $70,000, this action could result in an award greater than $75,000.00. This possibility alone is sufficient to meet Defendant's burden to show that the amount in controversy exceeds the jurisdictional minimum. Because Defendant has established by a preponderance of the evidence that the amount in controversy in the instant suit could exceed $75,000.00, removal was proper and the [c]ourt has subject matter jurisdiction over this suit.

Report 4-6. The magistrate judge, therefore, recommended that the court deny Plaintiff's Motion to Remand because both requirements for subject matter jurisdiction based on diversity—diversity of citizenship and the requisite amount in controversy—were satisfied.

### III.   The Parties' Responses to the Report

#### A.  Plaintiff's Objections

In objecting to the Report, Mr. Gore reasserts some of the arguments included in his Motion to Remand.  Doc. 26.  He also argues that the magistrate judge placed too much emphasis on his DTPA claim and not placing enough emphasis on his claim under Chapter 20 of the Texas Business Commerce Code. He further asserts that Defendant's argument that he seeks attorney's fees and punitive damages exceeding $75,000 is based on "purely conjectural rather than factual evidence." Pl.'s Obj. 5.  He contends that this is particularly so given the nature of his claims, the specific damages included in his pleadings, and his clear and express intent to limit relief to $100,000 or less, inclusive of all damages, penalties, costs, expenses, interest, and attorney's fees. *Id.* at 5-6.

#### B.  Defendant's Response

LexisNexis filed a response to Plaintiff's objections in which it asserts that the magistrate judge's findings and conclusions confirm that the court has subject matter jurisdiction, and Plaintiff has failed to point to any errors. Lexis Nexis argues:

> At bottom, because Plaintiff filed a Complaint that alleged "damages of $70,000 and reasonable and customary attorney's fees if applicable, cost of court, and for such other and further relief as justice may require" pursuant to the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17.41-17.63 ("DTPA") and Tex. Bus. & Com. Code §§ 20.01 [*et seq*.], diversity jurisdiction is established, and Plaintiff's Objection should be overruled.

Def.'s Resp. to Pl.'s Obj. 1-2 (Doc. 29).  LexisNexis asserts that "Plaintiff chose to bring claims under the Tex. Bus. & Com. Code §§ 20.01 [*et seq*.] *and* the DTPA, so the [c]ourt must assess the amount in controversy based on the potential recovery possible under all claims and requests for

relief alleged." *Id.* at 3. LexisNexis further asserts that, when a plaintiff alleges a DTPA claim, the potential "award of treble damages under the DTPA . . . is considered part of the amount in controversy." *Id.* at 2-3 (quoting *Theriot v. Transamerica Life Ins. Co.*, 354 F. Supp. 3d 713, 720 (E.D. Tex. 2017)).

In addition, LexisNexis notes that Plaintiff's contention that the Fifth Circuit "has cautioned against speculative leaps in assessing the amount in controversy," is not supported by any citation to legal authority. LexisNexis contends that, in any event, when, as here, a plaintiff pleads a specific amount of damages in violation of Texas state law, the Fifth Circuit, to address bad faith efforts by plaintiffs to manipulate and prevent removal, allows a defendant to prove the amount in controversy is satisfied. LexisNexis asserts that it has shown that the amount in controversy is met here because, "[b]ased on Plaintiff's request for $70,000 in damages and treble damages under the DTPA, it is facially apparent that damages could (assuming *arguendo* Plaintiff is successful) exceed the $75,000 threshold." Def.'s Resp. to Pl.'s Obj. 4. It, therefore, contends that the court should accept the magistrate judge's findings and conclusions that it has met its burden to show that the amount in controversy is satisfied given Plaintiff's request for $70,000, which if trebled under the DTPA, would result in a potential award greater than $75,000.

IV.   Discussion

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," and over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332. Federal courts may also exercise subject matter jurisdiction over a civil action removed from a state court. Unless Congress provides otherwise, a "civil action brought in a State court of which the district courts of the United States

have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted); *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking. *Id.* A federal court must presume that an action lies outside its limited jurisdiction. *Kokkonen*, 511 U.S. at 377 (citations omitted). "[S]ubject-matter jurisdiction cannot be created by waiver or consent." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001). A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case, *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999), and it may raise the issue *sua sponte*. *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005). "[T]he basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citation omitted).

Any doubts as to the propriety of the removal should be construed strictly in favor of remand. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it." *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (footnote omitted). Accordingly, if a case is removed to federal court, the defendant has the burden of establishing subject matter jurisdiction; if a case is initially filed in federal court, the burden rests

with the plaintiff to establish that the case "arises under" federal law, or that diversity exists and that the amount in controversy exceeds the jurisdictional threshold.

As the removing party, LexisNexis has the burden of establishing the existence of subject matter jurisdiction. Its only basis for removing the case to federal court is diversity jurisdiction. The court, therefore, limits its analysis to whether LexisNexis has met its burden of satisfying the requirements for diversity jurisdiction.

**A. Diversity of Citizenship**

Diversity of citizenship exists between the parties only if each plaintiff has a different citizenship from each defendant. *Getty Oil Corp.*, 841 F.2d at 1258. A natural person is considered a citizen of the state where he or she is domiciled, that is, where the person has a fixed residence with the intent to remain there indefinitely. *See Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 555-56 (5th Cir. 1985). "For diversity purposes, citizenship means domicile; mere residence in [a] [s]tate is not sufficient." *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 799 (5th Cir. 2007) (citation and quotation marks omitted). "Domicile requires residence in [a] state and an intent to remain in the state." *Id*. at 798 (citation omitted). A corporation is a "citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (explaining meaning of "principal place of business").

The Report concludes that there is complete diversity of citizenship between the parties because "the parties agree that Plaintiff is a citizen of Texas. (doc. 10-4 at 24; doc. 10 at 2.)," and "Defendant also alleges that it is "incorporated in Georgia and has its principal place of business in Alpharetta, Georgia." (doc. 10 at 2)[.]"

The Report correctly concludes that LexisNexis is a citizen of Georgia based on the allegations in its Amended Notice of Removal (Doc. 10), given its state of incorporation and principal place of business are both Georgia. The allegations in the Amended Notice of Removal are not sufficient though to establish that Plaintiff is a citizen of Texas, and, contrary to the Report, nothing in the record supports the conclusion that the parties agreed that Plaintiff is a citizen of Texas. Instead, Defendant incorrectly alleges that Plaintiff is a citizen of Texas based on the allegation in his Petition that "he resides in Dallas County, Texas." Doc. 10 at 2 (citing Pl.'s Pet. ¶¶ 2, 9).

As noted, however, residency and citizenship are not synonymous. *See Preston*, 485 F.3d at 789-99; *see also Parker v. Overman*, 59 U.S. 137, 141 (1855). Moreover, even if the parties had agreed that Plaintiff is a citizen of Texas, which is a legal conclusion, "subject-matter jurisdiction cannot be created by waiver or consent." *Howery*, 243 F.3d at 919. Parties can admit or stipulate to facts underlying the existence of jurisdiction, but they cannot consent to jurisdiction. *Durbois v. Deutsche Bank Nat'l Tr. Co. as Tr. of Holders of AAMES Mortg. Inv. Tr. 20054 Mortg. Backed Notes*, 37 F.4th 1053, 1060 (5th Cir. 2022) (citing *Railway Co. v. Ramsey*, 89 U.S. 322, 327 (1874)) (other citations omitted).

The court, nevertheless, determines that there is sufficient information in the documents attached to Defendant's Amended Notice of Removal to support the conclusion that Plaintiff is a citizen of Texas. Specifically, this information shows that, although Plaintiff has previously resided in both Louisiana and Texas, he was issued a Texas drivers' license on July 9, 2022, which is valid until February 13, 2030. That Plaintiff obtained and possessed a Texas drivers' license before filing this lawsuit against LexisNexis is probative of his intent to remain in Texas. *See Preston*, 485 F.3d at 816 (explaining that evidence of citizenship "may include the places where

the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family.") (citations omitted); *Evans v. Enterprise Prods. Partners*, LP, 426 F. Supp. 3d 397, 405 (S.D. Tex. 2019) ("Texas driver's licenses are also probative of an intent to remain in Texas, as a person is unlikely to obtain a driver's license in a state he does not intent to remain in for some time."). Thus, Plaintiff's allegations that he resided in Texas when he filed this lawsuit, together with the evidence that he had a Texas driver's license is sufficient to establish the existence of complete diversity of citizenship between the parties.

### B. Amount in Controversy

"The amount in controversy is 'not proof of the amount the plaintiff will recover' but 'an estimate of the amount that will be put at issue in the course of the litigation.'" *Durbois*, 37 F.4th at 1057 (citation omitted). The legal standard included in the Report and applied by the magistrate judge for determining the amount in controversy is a correct statement of law. Report 4-5. The court, however, respectfully disagrees with the Report's conclusion—based on the application of the law to the facts of this case—that LexisNexis met its burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.

LexisNexis appears to argue that the specific damage amount demanded by Plaintiff ($70,000) was made in bad faith because this allegation was made in contravention of Texas state law to manipulate and prevent removal:

> [C]ourts are skeptical of plaintiffs pleading certain amounts in controversy in bad faith to avoid diversity jurisdiction. **Texas state law prohibits plaintiffs from specifying a dollar amount of their alleged damages, as Plaintiff did here.** *Gilman v. Arthur J. Gallagher & Co.*, No. H-09-2355, 2009 U.S. Dist. LEXIS 118326, at *10 (S.D. Tex. Dec. 21, 2009) ("Texas, prohibit plaintiffs from specifying the dollar amount of their damages."). When a plaintiff pleads a specific amount of

> damages in violation of Texas state law, the Fifth Circuit allows a defendant to prove the amount in controversy is met. *See id.* ("[T]he Fifth Circuit allows a removing defendant to prove the amount in controversy actually does, in fact, exceed the jurisdictional amount required in diversity cases . . . out of concern that plaintiffs may in bad faith manipulate the removal provisions by pleading below $75,000 in state court knowing they ultimately may recover more than that.").

Def.'s Resp. to Pl.'s Obj. to Report 4 (emphasis added).

As a preliminary matter, Defendant's reliance on authority predating 2013 for the proposition that Texas state law prohibits plaintiffs from specifying a dollar amount of their alleged damages is inconsistent current Texas law and Fifth Circuit precedent interpreting Texas law. In 2022, the Fifth Circuit rejected a similar argument by the defendant in *Durbois*, reasoning that "the mere fact that [the plaintiff] pleaded a demand for specific damages [in state court prior to removal] cannot support bad faith," as such a finding "would contradict the well-established principle that the plaintiff is the master of [his] complaint." *Durbois*, 37 F.4th at 1060 (citations and internal quotation marks omitted). The court in *Durbois* explained that, as a result of a 2013 amendment, which occurred after its opinion in *De Aguilar II*, Texas Rule of Civil Procedure 47 no longer prevents a plaintiff from demanding a specific sum or damages up to but no higher than a stated amount. *Id.* at 1059 ("[A]fter the amendment, Rule 47 contemplates pleadings that 'specify the *maximum* amount claimed.'") (quoting Tex. R. Civ. P. 47).

Moreover, while LexisNexis implies that Plaintiff's $70,000 demand was made in bad faith, it nevertheless relies on this same damage amount to satisfy the amount in controversy by alleging that, if Plaintiff prevails on his DTPA claim, his recovery will likely exceed $75,000 because treble damages (3 x $70,000) are recoverable under the DTPA. Thus, instead of setting forth facts in controversy in its Notices of Removal or an affidavit that supports a finding of the requisite amount in controversy, *see Allen*, 63 F.3d at 1335, LexisNexis has consistently argued

based on the foregoing reasoning that it is facially apparent from Plaintiff's pleadings that the amount in controversy will likely exceed $75,000.

Because Mr. Gore's Petition includes a demand for a specific amount of damages, the amount demanded by him "remains presumptively correct unless [LexisNexis] can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount." *See De Aguilar II*, 47 at 1412 (explaining that the preponderance of evidence burden "forces a [removing] defendant to do more than point to a state law that might allow the plaintiff to recover more than what is pled. The defendant must produce evidence that establishes that the actual amount in controversy exceeds $[75],000.") *Id.* LexisNexis, however, has not come forward with any evidence; rather, as noted, it relies on Plaintiff's pleadings and Texas state law that entitle a prevailing plaintiff to recover treble damages and attorney's fees under the DTPA, which is insufficient under *De Aguilar II*.

Additionally, the court disagrees that it is facially apparent from Plaintiff's pleadings that the amount in controversy exceeds $75,000, as there is no factual basis to support his demand of $70,000 for the injuries alleged. As indicated, Mr. Gore alleges that LexisNexis included inaccurate information in his credit report regarding the 2016 traffic violation and failed to delete or correct the inaccurate information after he brought the alleged inaccuracy to LexisNexis's attention. Plaintiff contends that LexisNexis's conduct violated Texas Business and Commerce Code sections 20.12 and 17.50, and he suffered various damages as a result.

Texas Business and Commerce Code section 20.06 establishes procedures for consumers to dispute and consumer reporting agencies to follow in responding to consumer requests for investigations of information included in a credit report or file. Tex. Bus. & Comm. Code Ann. § 20.06. Violation of this provision creates liability as determined by section 20.09, which sets forth

the amount of damages awardable depending on whether the consumer reporting agency's conduct was negligent or willful. *Id.* § 20.09.

For willful violations, a consumer is entitled to recover "the greater of three times the amount of actual damages to the consumer or $1,000, reasonable attorney fees, and court . . . costs." *Id.* § 20.09(a). For negligent violations, a consumer is entitled to recover "the greater of three times the amount of actual damages to the consumer or $500, reasonable attorney fees, and court . . . costs." *Id.* § 20.09(b). Section 20.09(b) explains that:

> A consumer reporting agency is not considered to have negligently violated this chapter if, not later than the 30th day after the date on which the agency receives notice of a dispute from the consumer under Section 20.06 that clearly explains the nature and substance of the dispute, the agency completes the reinvestigation and sends the consumer and, at the request of the consumer, each person who received the consumer information written notification of the results of the reinvestigation in accordance with Section 20.06(f).

*Id.* Section 20.12 further provides that "[a] violation of this chapter is a false, misleading, or deceptive act or practice" under the DTPA. *Id.* § 20.12.

To pursue a DTPA cause of action, a plaintiff must be a consumer. *See* Tex. Bus. & Comm. Code Ann. § 17.50(a). To be a consumer under the DTPA, a plaintiff must "seek or acquire goods or services by purchase or lease" and those goods or services must form the basis of the complaint. *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex. App.—San Antonio 2002, pet. denied). Whether a plaintiff qualifies as a "consumer" under the DTPA is decided as a matter of law by the trial court. *Id.*

Here, Mr. Gore alleges in his Petition that LexisNexis reported inaccurate information regarding his criminal record to "subscribers"; that the information was disclosed to "businesses, employers, insurance companies, and credit bureaus"; and that such disclosure directly "influenc[ed] the denial of favorable financial terms by businesses particularly insurance

companies and potential employers." Pl.'s Pet. ¶¶ 13, 17, 24, 26. Plaintiff, however, does not allege that he was a LexisNexis subscriber, or that he sought or purchased the credit reporting services from LexisNexis that are the subject of his claims. Further, while the insurance companies and potential employers that allegedly had access to such services and information might qualify as consumers if they purchased consumer credit services from LexisNexis, this does not make Mr. Gore a consumer for purposes of the DTPA.

At most, it would make him an incidental beneficiary, which is insufficient. *See Ewbank v. ChoicePoint Inc.*, 551 F. Supp. 2d 563, 567-68 (N.D. Tex. 2008) ("[I]t is undisputed that Fieldglass was the purchaser of the goods or services—the criminal records check regarding Ewbank—from ChoicePoint. Although the results of that check could possibly have cleared the way for the hiring of Ewbank by Fieldglass, the court finds that Ewbank is not a consumer, and is at most an incidental beneficiary of the transaction between Fieldglass and ChoicePoint. Fieldglass obtained services from ChoicePoint in order to confirm whether Ewbank had a criminal record. That Ewbank may have benefitted, or been damaged, by the conduct of ChoicePoint in providing those services does not make her a consumer under the DTPA.") (citations omitted).

While section 20.12 is a "tie-in" statute to the DTPA such that a violation of the of the former is also a violation of the latter, this does not excuse a plaintiff such as Mr. Gore from qualifying as a consumer under the DTPA. *See Hansberger v. EMC Mortg. Corp.*, No. 04-08-00438-CV, 2009 WL 2264996, at *2 (Tex. App.—San Antonio July 29, 2009, pet. denied) ("[T]he party bringing a claim under the DTPA for a violation of a tie-in statute must still satisfy the requirement of being a 'consumer.'"). Having determined that Mr. Gore's DTPA claim as pleaded fails because he does not qualify as a consumer, the court need not detail the additional reasons

why the damages he alleges with respect to the DTPA are conclusory and insufficient to establish that the amount in controversy exceeds $75,000.

Mr. Gore alleges that he suffered the same injuries and corresponding damages in connection with his claim for alleged credit reporting violations under section 20.12 of the Texas Business and Commerce Code. He alleges that, as result of LexisNexis's conduct, his "privacy was improperly invaded," "his peace of mind was disturbed," "[he was] denied favorable auto insurance rates," the criminal conviction was disclosed to potential employers and businesses, and "he was forced to spend time and resources to correct[] his credit and criminal history file." Pl.'s Pet. ¶ 24. More specifically, he alleges that he was harmed as follows by LexisNexis:

> Defendant's prohibited and inaccurate credit data furnishing, and otherwise furnishing data not permissible under state laws has harmed [him] by (1) the adverse credit reporting item subject to this action; (2) improperly invasion of privacy; (3) disturbing his peace of mind; (4) directly influencing the denial of favorable financial terms by businesses particularly insurance companies and potential employers; (5) forcing him to spend time and resources tending to correcting his credit; and (6) causing aggravation, indignation, humiliation, embarrassment, anxiety, anguish, depression, unwarranted stress and loss of enjoyment of life.

*Id.* ¶ 26.

Even assuming that mental anguish damages are recoverable as actual damages under section 20.09, his allegations regarding the disruption to his peace of mind and the other emotions he experienced are far too conclusory to support an award of damages for mental anguish. *See Parkway Co. v. Woodruff*, 901 S.W.2d 434, 445 (Tex. 1995) (concluding that the plaintiff's testimony that she and her husband experienced various emotions, including being "upset" and feeling "anger, frustration, or vexation" did "not support the conclusion that [they] suffered compensable mental anguish."). To be compensable, mental anguish requires factual allegations regarding the "nature, duration, and severity of [the plaintiff's] mental anguish" that, if proved,

would be sufficient to establish "a substantial disruption in the plaintiff['s] daily routine" such as "a threat to one's physical safety or reputation." *Id.* at 444. Temporary disturbances alone are insufficient to "support an inference that compensable mental anguish occurred." *Id.* at 445 (footnote omitted).

Similarly, Plaintiff's allegation that LexisNexis's conduct "directly influenc[ed] the denial of favorable financial terms by businesses particularly insurance companies and potential employers" is too conclusory, as it is not even clear what is meant by "denial of favorable financial terms by . . . potential employers." Even assuming that Plaintiff meant to allege that he applied for and was turned down for a job or a lower insurance rate, this too is too vague. While such events could be a source of "aggravation," Pl.'s Pet. ¶ 26, without more details, Plaintiff's allegations regarding this and other emotions he experienced are insufficient to support a finding of mental anguish. *See Parkway Co.*, 901 S.W.2d at 445.

Additionally, Plaintiff's Petition does not include factual allegations from which the court can ascertain whether he believes that Defendant's alleged inclusion of inaccurate information in his credit report or file was negligent or willful. Because Plaintiff filed the state court action only three weeks after notifying LexisNexis of his dispute, his Petition does not indicate whether LexisNexis complied or attempted to comply with section 20.06(f) within 30 days after first receiving notice of his dispute on February 13, 2023. *See* Tex. Bus. & Comm. Code Ann. § 20.09(b) (explaining that "[a] consumer reporting agency is not considered to have negligently violated" the statute if it complies with section 20.06(f) in performing a reinvestigation). Regardless, without more information, the court is unable to put a monetary value on Mr. Gore's allegation that he suffered the "denial of favorable financial terms by businesses particularly

insurance companies and potential employers" that were influenced by the inclusion of allegedly inaccurate information in the credit report or file maintained by LexisNexis.

At most, the court can only guess or speculate regarding the monetary loss attributable to such events, which it cannot do in determining the amount in controversy required for diversity jurisdiction. Thus, although the statute provides for the greater of three times the amount of actual damages suffered or statutory damages, there is insufficient information here to support an amount of actual damages for the reasons already explained that could be trebled. Subsections 20.09(a) and (b) provide for statutory damages of $1,000 or $500 in lieu of treble damages, but statutory damages in this amount would not come close to satisfying the amount in controversy requirement.

Finally, while it is well-settled that attorney's fees are part of the amount of controversy, it is undisputed that Mr. Gore is proceeding pro se, and there is no indication that he is licensed to practice law. Accordingly, Mr. Gore is correct that he would not be entitled to an award of attorney's fees under the DTPA or section 20.09, even though both permit the recovery of attorney's fees. *Cf. Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 488 (Tex. 2019) (noting that an attorney can recover attorney's fees for pro se representation if the fee-awarding statute does not require the party to "incur" fees).

For all of these reasons, the court concludes that the specific amount demanded by Mr. Gore ($70,000) is not supported by the conclusory allegations in his Petition. Similarly, his allegation, pursuant to Texas Rule of Civil Procedure 47, that he "seeks only monetary relief of $100,000 or less, including damages of any kind, penalties, costs, expenses, prejudgment interest and attorney's fees" does not establish that the amount in controversy is met because it encompasses monetary amounts less than $75,000. Pl.'s Pet. ¶ 3. Thus, contrary to LexisNexis's

assertion, it is not facially apparent from Mr. Gore's pleadings that the amount in controversy exceeds the $75,000.

Moreover, LexisNexis has not demonstrated, by a preponderance of the evidence, that the jurisdictional amount in controversy is satisfied. The court, therefore, disagrees with the Report's conclusion that LexisNexis has met its burden as the removing party of establishing the existence of diversity jurisdiction. Construing as it must any doubts regarding the propriety of the removal strictly in favor of remand, the court determines that this action must be remanded. *See Manguno*, 276 F.3d at 723.

## V.     Plaintiff's Request for Sanctions

Plaintiff acknowledges that he is not entitled to recover attorney's fees as a result of Defendant's improper removal of this action to federal court, but he asserts that he has expended time and effort in researching, drafting, and filing his Motion to Remand, and Defendant should be sanctioned "to discourage frivolous act[s] and waste of judicial resource[s] in the future." Pl.'s Mot. Remand 6.

As explained, Plaintiff is correct that he is not entitled to recover attorney's fees. Moreover, although removal of the action was improper, Plaintiff does not cite to any legal authority that would authorize the court to impose a monetary sanction against Defendant under the circumstances. Accordingly, the court will deny this request by him.

## VI.    Conclusion

For the reasons explained, the court **concludes** that it lacks subject matter jurisdiction over this action because Defendant has not met its burden of establishing that the monetary threshold for diversity jurisdiction is satisfied. Thus, having considered Plaintiff's Motion to Remand, the parties' briefs, the pleadings, Amended Notice to Removal, the file, record in this case, and Report,

and having conducted a de novo review of that portion of the Report to with objection was made, the court **sustains** Plaintiff's objection to the Report and **rejects** the findings and conclusions of the magistrate judge. The court, therefore, **grants** Plaintiff's Motion to Remand (Doc. 5) and **remands** this action to the 298th Judicial District Court, Dallas County, Texas, from which it was removed.  Further, the court **denies** Plaintiff's request for sanctions against Defendant.

The court **directs** the clerk of court to effect the remand in accordance with the usual procedure.  The court also **directs** the clerk of court to place **under seal** the attachments to Defendant's Notice of Removal (Doc. 1-2) and Amended Notice of Removal (Doc. 10-4), which contain Mr. Gore's personal identifying information, including an unredacted copy of his Texas driver's license, multiple references to his social security number, and other nonpublic information contained in his credit report and the file maintained by LexisNexis. Given the sensitive nature of this information, LexisNexis should have sought leave of court to file them under seal or to file redacted versions of the documents before filing them and making them publicly available.

**It is so ordered** this 1st day of December, 2023.

*/s/ Sam A. Lindsay*
Sam A. Lindsay
United States District Judge